## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **FIDELITY NATIONAL TITLE** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action Number** |
| | ) | **5:16-cv-00844-AKK** |
| **v.** | ) | |
| | ) | |
| **TRACY C. WOODEN, ET AL.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Fidelity National Title Insurance Company ("Fidelity") filed this action against Tracy and Kristi Wooden (the "Woodens") and Smartbank, seeking legal and equitable relief related to a title policy it issued to the Woodens. Doc. 1. Fidelity maintains that the Woodens were partially responsible for creating a defective legal description of the property the Woodens purchased from Smartbank and also were not financially harmed by the defect. Doc. 96 at 8. Therefore, Fidelity maintains that the title policy it issued should exclude Lot 5 which was included in the legal description based on a purported mistake. *Id.* The Woodens contend that they believed that the property they purchased from Smartbank included Lot 5, that they did not create the legal defect in the property description, and that they are due compensation for the loss under the title policy. Doc. 98 at 12-23. Smartbank maintains that it never represented that it owned Lot 5 in the

property sale to the Woodens and should not be held liable for the defective property description.  Doc. 95 at 3-6.

Based on their varying contentions, the parties have pleaded the following claims:  Fidelity asserts six claims including reformation (Count I) and declaratory judgment (Count II) against the Woodens and Smartbank, negligent misrepresentation (Count III) and unclean hands/estoppel from opposing reformation efforts (Count IV) against the Woodens, and contingent claims for breach of contract (Count V) and breach of warranty (Count VI) against Smartbank in the event the Woodens prevail against Fidelity, docs. 91, 96; (2) the Woodens countered with claims against Fidelity for declaratory judgment (Count I), breach of contract and judgment for interest (Count II), and bad faith refusal to pay (Count III), doc. 98; and (3) Smartbank filed counterclaims against Fidelity and crossclaims against the Woodens seeking reformation (Count I) and declaratory judgment (Count II), doc. 95.

Presently before the court are the parties' partial motions and cross-motions for summary judgment.  Specifically, Fidelity moves on its own reformation and declaratory judgment claims, as well as on the Woodens' counterclaims against it. Doc. 112.  For their part, the Woodens seek summary judgment on their counterclaim for declaratory judgment, on all of Fidelity's claims against them, doc. 114, and on Smartbank's crossclaims for reformation and declaratory

judgment, doc. 115. Finally, Smartbank has moved on its reformation claim and Fidelity's breach of contract claim against it. Doc. 116. For the reasons stated fully below, the court finds that only Fidelity's motion related to the Woodens' bad faith claim is due to be granted.

## I. LEGAL STANDARD FOR SUMMARY JUDGMENT

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment motions, the court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255. Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

The simple fact that all parties have filed partial motions for summary judgment does not alter the ordinary standard of review. *See Chambers & Co. v. Equitable Life Assurance Soc.*, 224 F.2d 338, 345 (5th Cir. 1955) (explaining that cross-motions for summary judgment "[do] not warrant the granting of either motion if the record reflects a genuine issue of fact"). Rather, the court will

consider each motion separately "'as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.'" *3D Med. Imaging Sys., LLC v. Visage Imaging, Inc.*, 228 F. Supp. 3d 1331, 1336 (N.D. Ga. 2017) (quoting *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538–39 (5th Cir. 2004)). The court notes that although cross-motions "'may be probative of the non-existence of a factual dispute'" they "'will not, in themselves, warrant [the granting of] summary judgment.'" *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (quoting *Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975)).

## II. FACTUAL BACKGROUND

In April 2010, Smartbank acquired a deed at a foreclosure sale to a 635-acre property consisting of undeveloped lots in an area known as Long Island Overlook that is located in Jackson County, Alabama. Doc. 96-3. The foreclosure deed included all but one lot within the property, known as "Lot 5, Phase II," which the previous owner, Southern Group, LLC, had transferred to another individual the prior year. Doc. 113-2. Three months after acquiring the property deed, Smartbank agreed to sell the property to the Woodens for $800,000. Doc. 96-4. The contract described the property as "land located in Jackson County, Alabama" and "635 acres owned by Seller known as the Long Island Overlook property." *Id.* at 2. The contract also included placeholder language stating that "the legal

description is to be replaced with a title company's legal description upon completion of the title examination." *Id*. at 7.

Subsequently, Warranty Title created a description of the property without explicitly referencing individual subdivision lots, and RLS Group LLC provided a "corners survey" of the property which included Lot 5 of "Final Plat Long Island Overlook-Phase 2." Doc. 113-8. RLS's survey work and descriptions of the property, which erroneously included Lots 5 and 38 but left out Lot 39, were used for the legal description in the Special Warranty Deed Smartbank issued to the Woodens. Docs. 113-11; 113-23.

After obtaining the deed, the Woodens purchased a title insurance policy from Fidelity. Doc. 113-21. The policy incorporated by reference the property description in the foreclosure deed to Smartbank (which did not include Lot 5) and the property description in the Special Warranty Deed (which included Lot 5). *Id.* at 6. The policy Fidelity issued is a standard one covering risks related to title being vested other than as stated in the property description, defects in lien or encumbrance on the title, and unmarketable title. *Id.* at 3. The policy excluded coverage for "defects, liens, encumbrances, adverse claims, or other matters . . . created, suffered, assumed, or agreed to by the Insured Claimant." *Id.*

Warranty Title subsequently discovered the mistakes in the property description and presented the Woodens with a revised instrument to reform the

Special Warranty Deed.  The Woodens refused to sign, maintaining among other things that they are due coverage for Lot 5 under the policy Fidelity issued. Docs. 27-2; 113-23.  Thereafter, Fidelity filed this lawsuit seeking in part to reform the policy to exclude Lot 5 and a declaratory judgment that it has no obligation to provide coverage for Lot 5.  Doc. 96.

### III. ANALYSIS

Presently before the court are the parties' partial motions for summary judgment on reformation and declaratory judgment claims, as well as various claims for breach of contract, bad faith, negligent misrepresentation, and unclean hands/estoppel. The court will address the motions collectively beginning with the reformation and declaratory judgment claims, followed by the breach of contract and tort claims.[1]  In ruling on these motions, in light of the evidentiary objections the Woodens raise, *see* doc. 120 at 4-5, the court has not relied on Patty Martin's affidavit or Smartbank's June 2010 appraisal.  The court will address the parties' contentions on these two matters if Fidelity seeks to introduce them at trial.

---

[1] Fidelity also moved for summary judgment on the Woodens' fraud counterclaim.  However, the Woodens abandoned this claim in their amended counterclaims. Doc. 98.

**A. Fidelity and Smartbank's Contract Reformation Claims**

Under Alabama law,[2] "when a [contract] through mutual mistake of the parties, or mistake of one of the parties, and fraud or deception on the part of the other . . . contains substantially more or less than the parties intended , . . . it will be reformed to express the true intention of the parties." *Pullum v. Pullum*, 58 So. 3d 752, 756 (Ala. 2010) (citing Ala. Code § 8-1-2 (1975)). Although courts can use reformation to make the contract conform to the parties' intentions, *Original Church of God, Inc. v. Perkins*, 293 So. 2d 292, 293 (Ala. 1974), the remedy is "not available to make a new agreement." *Highlands Underwriters Ins. Co. v. Elegante Inns, Inc.*, 361 So. 2d 1060, 1064 (Ala. 1978). To invoke reformation, a party must show "(1) mutual mistake, (2) mistake of one party and inequitable conduct on the part of the other party, or (3) fraud." *See, e.g.,* Ala. Code § 8-1-2 (1975); *EBSCO Industries, Inc. v. Royal Ins. Co. of America,* 775 So. 2d 128, 131 (Ala. 2000). For the reasons stated below, material issues of fact exist that preclude the court from finding as a matter of law that Fidelity and Smartbank can invoke the remedy.

1. Fidelity's motion

Fidelity seeks reformation of the title policy based on the reference to Lot 5 in the Special Warranty Deed. Doc. 112 at 11-15. More specifically, Fidelity

---

[2] The court has subject matter jurisdiction over this dispute based on diversity, and as such, the court applies Alabama's substantive law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

contends that Smartbank and the Woodens mistakenly relied on the legal description prepared by the scrivener who conveyed more property than what Smartbank and the Woodens purportedly intended. *Id.* at 13. Reformation of an instrument based on mutual mistake requires that the "mistake be mutual as to all parties to the instrument." *Fadalla v. Fadalla*, 929 So. 2d 429, 434 (Ala. 2005). The parties must have a "meeting of minds, an agreement actually entered into, but the contract or deed in its written form does not express what was really intended by the parties." *Gray v. Bain*, 164 So. 3d 553, 564 (Ala. 2014). Because the instrument is presumed to support the true agreement, Fidelity must produce "*clear, convincing, and satisfactory evidence*" that the deed fails to express the parties' true intent at the time they created the instrument. *Simpson v. First Alabama Bank of Montgomery, N. A.*, 364 So. 2d 289, 291 (Ala. 1978) (emphasis added).

To support its position, Fidelity cites *Lawyers Title Ins. Co. v. Golf Links Dev. Corp.*, a case where the court granted reformation on a title policy that erroneously included an extra lot in the property's legal description. 87 F. Supp. 2d 505, 508 (W.D.N.C. 1999). *Lawyers Title Ins. Co.* is distinguishable however because the defendant admitted that he "absolutely" did not know what he was purchasing, merely looked at the pictures of the property, gathered a "general sense" of the property value, did not read the legal description, and briefly visited

the property.  *Id.*  In contrast, Tracy Wooden and Travis Shield (Chief Manager of Southern Group) testified that Southern Group led Tracy Wooden to believe that the foreclosed property that the Woodens purchased from Smartbank included the home on Lot 5.  Docs. 113-17 at 11; 114-7.  Moreover, RLS Group circulated the survey (which included Lot 5) prior to the closing on the property purchase and before the Woodens purchased the title policy, reinforcing the Woodens' contention that their purchase included Lot 5. Docs. 113-6, 113-7, 113-8, 113-11 at 9.  Indeed, Kristi Wooden testified about seeing the house on Lot 5 prior to the purchase, reviewing the title commitment and deed, and tracing the legal description to the RLS survey.  Doc. 58-6 at 5.  This evidence creates a material factual dispute over whether the Woodens believed their purchase included Lot 5, and precludes the court from granting Fidelity's motion on the reformation claim. A trier of fact must weigh the evidence to determine whether the Woodens' belief was due to a unilateral mistake on their part or if their testimony on intending to purchase Lot 5 is contradicted even by their own testimony and actions as Fidelity maintains.  *See American and Foreign Ins. Co. v. Tee Jays Mfg. Co., Inc.*, 699 So. 2d 1226, 1227–28 (Ala.1997); *Sunshine Bank of Ft. Walton Beach v. Smith*, 631 So. 2d 965, 968 (Ala. 1994).  *See also* docs. 112 at 8; 114-9 (Fidelity's contention that the Woodens equivocate over their intent to purchase Lot 5 based on when the

Woodens obtained keys, changed utilities, spoke with Randy King, the current owner of Lot 5, or paid taxes on Lot 5).

### 2. The Woodens and Smartbank's cross-motions

The Woodens and Smartbank both seek summary judgment on Smartbank's claim to reform the Special Warranty Deed.  Docs. 115 at 8, 117 at 26.  For its part, Smartbank argues that (1) the parties mutually relied on the scrivener who mistakenly included Lot 5 and/or (2) it made a unilateral mistake based on the Woodens' inequitable conduct.  Doc. 117 at 26-31.  *See* Ala. Code § 35-4-153 (2014) (reformation of deed, mortgage or other conveyance); Ala. Code § 8-1-2 (1975) (reformation of contracts).  To prevail, Smartbank must provide clear and convincing evidence that the contract does not express the parties' actual intent. *See Simpson,* 364 So. 2d 289; *Gray,* 164 So. 3d at 564.  At this juncture, however, viewing the evidence in the light most favorable to the Woodens, the court cannot find that the Woodens did not intend to purchase Lot 5.  The contract explicitly states that the property's "legal description is to be replaced with a title company's legal description upon completion of the title examination" and that "[Smartbank] agrees to provide [the Woodens] with a survey of the Property and to provide GPS coordinates on the survey" as a condition to closing.  Doc. 113-4 at 3, 6. Consistent with this language, RLS Group's survey, which included Lot 5, became part of the contract.  Based on this sequence of events, Smartbank has failed to

meet its burden to demonstrate a mutual mistake[3] to reform the Special Warranty

Deed, and the court cannot find as a matter of law that the inclusion of Lot 5 was

contrary to the Woodens' actual intent in purchasing the property. *See, e.g.,*

*Nationwide Mut. Fire Ins. Co. v. Guster Law Firm, LLC,* 568 F. App'x 884, 885

(11th Cir. 2014) (Parties cannot use reformation to "make a new agreement" and

must "prove that the parties had a meeting of the minds at the time of the contract

on the version of the contract which [the party] now urge[s]."). Relatedly, given

the factual disputes over the Woodens' intent to purchase Lot 5, the Woodens' own

motion on Smartbank's reformation claim — premised on the contention that

Smartbank cannot provide undisputed evidence that the Woodens did not intend to

purchase Lot 5, doc. 115 at 14 — is also due to be denied.

## B. The Declaratory Judgment Claims

All three parties have pleaded claims for declaratory judgment, and Fidelity

and the Woodens have moved for summary judgment on these claims. In

Alabama, parties "whose rights, status, or other legal relations are affected by a . . .

contract" may "have determined any question of construction or validity arising

---

[3] Smartbank alternatively argues a unilateral mistake on its part, contending that the "Woodens knew of and contributed to the mistaken legal description" and their "actions caused the mistaken legal descriptions to be created." Doc. 117 at 30-31. Although Smartbank may ultimately succeed in proving these contentions, at this juncture the court cannot ignore the Woodens' contention that they did not alter references to Lot 5 in the Warranty Title or the parties' dispute over who instructed the RLS Survey Group to include Lot 5. *See King v. Westbrook,* 358 So. 2d 727, 729 (Ala. 1978) (no reformation for a unilateral mistake absent fraud).

under the . . . contract" and obtain declaratory "judgment of rights, status, or other legal relations." Ala. Code § 6–6–223 (1975). "General rules of contract law govern an insurance contract," and "[t]he court must enforce the insurance policy as written if the terms are unambiguous." *Lambert v. Coregis Ins. Co., Inc.*, 950 So. 2d 1156, 1161 (Ala. 2006) (quoting *Safeway Ins. Co. of Ala. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005)) (internal citations and quotations omitted). "[W]hen doubt exists as to whether coverage is provided under an insurance policy, the language used by the insurer must be construed for the benefit of the insured." *St. Paul Mercury Ins. Co. v. Chilton–Shelby Mental Health Ctr.*, 595 So. 2d 1375, 1377 (Ala. 1992). Further, "when ambiguity exists in the language of exclusion, the exclusion will be construed so as to limit the exclusion to the narrowest application reasonable under the wording." *Id.* (citation omitted). Nonetheless, "in the absence of statutory provisions to the contrary, insurers have the right to limit their liability by writing policies with narrow coverage." *Id.* Indeed, "[i]f there is no ambiguity, courts must enforce insurance contracts as written and cannot defeat express provisions in a policy, including exclusions from coverage, by making a new contract for the parties." *Id.*

## 1. Fidelity's motion

Fidelity asks the court to declare that the Woodens cannot claim an actual loss under the policy because drafting errors committed by the Woodens' agent led

to the inclusion of Lot 5 in the policy. Doc. 112 at 17. In particular, Fidelity cites the exclusions related to "defects, liens, encumbrances, adverse claims or other matters: (a) created, suffered, assumed or agreed to by the Insured Claimant; . . . [or] (c) resulting in no loss damage to the Insured Claimant . . ." Doc. 1-7 at 3. However, as to the first exclusion, although evidence shows that the "Woodens were intimately involved in the surveying process," doc. 94 at 2, a genuine dispute exists regarding whether the Woodens assumed or created the defect and whether the survey and legal description errors can be imputed to the Woodens via an agency relationship.[4] The facts in this case are far from conclusive,[5] precluding

_____

[4] "In Alabama, agency is determined by the facts of the case, not by how the parties may characterize their relationship." *Ragsdale v. Life Ins. Co. of N. Am.*, 632 So. 2d 465, 468 (Ala. 1994). Generally, "[a]gency is . . . a question of fact to be determined by the trier of fact," *Brown ex rel. Brown v. St. Vincent's Hosp.*, 899 So. 2d 227, 237 (Ala. 2004), and "when a defendant's liability is based on a theory of agency, an agency relationship may not be presumed" and thus "the plaintiff must present substantial evidence of an agency relationship." *Wallace v. Frontier Bank, N.A.,* 903 So. 2d 792, 801 (Ala. 2004).

[5] Disputes exists regarding who hired or directed RLS Group and/or Warranty Title to draft the legal description for the Contract, Special Warranty Deed, and Title Insurance Policy: Patrick Bennett, an underwriting counsel for Fidelity, admits on several occasions that "Warranty Title was a title agent of Fidelity in 2010 when the [policy] was issued." Doc. 114-13 at 7, 10, 14, 16. Fidelity filed a recoupment demand and created a tolling agreement with Warranty Title. Doc. 117-23. Cynthia Baines, senior claims counsel for Fidelity, testified also that Warranty Title was Fidelity's agent. Docs. 117-27 at 10, 18, 22, 33 and 114-15 at 6. Robert Watson, executive vice president of Smartbank, testified that the bank paid RLS Group for the initial survey and that he could not recall "if it was [him] or Jerry Lee" who suggested using Warranty Title to close the transaction with the Woodens. Docs. 114-3 at 13 and 117-8 at 4. Michael Loyd, owner of RLS Group, testified that after another surveyor, Larry Newman, declined the task of doing the corner survey because "the job was too big for him," RLS Group's name was "passed on to [Smartbank]" which paid RLS for survey work on behalf of Tracey Wooden. Doc. 114-4 at 5, 11. Finally, although Kristi Wooden, at the instruction of Warranty Title, asked RLS Group to send the final description to the title agent, the prior changes the Woodens made to the survey did not alter the original inclusion of "Lots 2-7 of Phase II" in the original survey. Doc. 117-14.

the court from finding as a matter of law that the Woodens "created, suffered, assumed, or agreed to" a defect in the policy's property description.

Similarly, as to the second exclusion, the court cannot find as a matter of law that the Woodens have suffered no loss or damages. To the contrary, Tracy Wooden maintains that based on "being familiar with property values in that specific area [of Jackson County, Alabama] for a large number of years, [he] knew the property wasn't anywhere near [$]800,000 without [Lot 5] and the appraisal confirms that." Doc. 113-17 at 29, 34. Moreover, he attests that "if [he got] neither good title to Lot 5 nor recovery on [his] claim, then [he] will have paid dramatically more per acre than [he] paid per acre for other large tracts nearby." Doc. 114-8 at 5-6. For these reasons, Fidelity's motion on its declaratory judgment claim is due to be denied.

## 2. The Woodens' motion

The Woodens also ask the court to rule that the title policy covered Lot 5 and to dismiss Fidelity's declaratory judgment claim, noting that the policy covers "loss or damage . . . sustained or incurred by the Insured by reason of: 1. Title being vested other than as stated in Schedule A," or "2. Any defect in or lien or encumbrance on the Title." Doc. 1-7 at 2. Although the court must construe insurance policies "in a manner most favorable to the insured" when an ambiguity exists, the court must also "enforce the contract as written and cannot defeat

express provisions in the policy, including exclusions, by making a new contract for the parties." *Westchester Fire Ins. Co. v. Barnett Millworks, Inc.*, 364 So. 2d 1137 (Ala.1978). Thus, given the dispute regarding whether the Woodens caused the defect related to Lot 5, the court cannot find as a matter of law that the title policy covered Lot 5 or that the policy exclusions are inapplicable. *Turner v. U.S. Fid. & Guar. Co.*, 440 So. 2d 1026, 1028 (Ala. 1983) ("To arrive at a construction reasonably calculated to accomplish the intent and purpose of the parties, moreover, we cannot construe a sentence in the policy in isolation, but rather we construe it in connection with other provisions of the policy."). As such, the Woodens' motion as to their declaratory judgment claim and Fidelity's claim is also due to be denied.

For the same reasons, the Woodens' motion on Smartbank's declaratory judgment crossclaim[6] is also due to be denied. Again, a material dispute exists over which party directed or enlisted Warranty Title and/or RLS Group to draft the survey and legal description. *See* docs. 114-4 at 5, 1; 114-3 at 13; 117-8 at 4. It is for the trier of fact to ultimately decide whether Smartbank paid RLS Group to conduct the survey and draft the legal description as the Woodens contend or

---

[6] Smartbank seeks a declaration "that the Special Warranty Deed does not include Lot 5 because Smartbank never owned Lot 5, never intended to convey Lot 5 to the Woodens, and never represented that Lot 5 was being conveyed." Doc. 115 at 15-18.

whether Smartbank was completely unaware of the changes made to the legal description by the Woodens' agents.  *See* docs. 114-3 at 13 and 113-14 at 17-18.

### C.  The Woodens' Bad Faith Claim

In Count III of their counterclaim, the Woodens plead that Fidelity has engaged in bad faith by failing to pay their claim related to Lot 5.  Fidelity contends that the Woodens are unable to prove the various elements to sustain this claim.[7]  Doc. 112 at 18. The court agrees.

"Under Alabama law, bad faith is a 'singular' tort with two different methods of proof—'normal' bad faith, also known as bad faith refusal to pay, and 'abnormal' bad faith, also known as bad faith failure to investigate."  *Cole v. Owners Ins. Co*., 326 F. Supp. 3d 1307, 1329 (N.D. Ala. 2018).  Bad faith tort claims are an "extreme remedy" and "available only in extreme circumstances," *Alfa Mutual Insurance Co. v. Northington*, 604 So. 2d 758, 760 (Ala. 1992).  As such, the Woodens must show that Fidelity engaged in conduct that was "not simply bad judgment or negligence," but rather "imports a dishonest purpose and means a breach of a known duty, good faith and fair dealing through some motive or self-interest or ill will." *Gulf Atlantic Life Insurance Co. v. Barnes,* 405 So. 2d 916, 924 (Ala. 1981).  "For a 'normal' bad-faith claim to be submitted to the jury,

_____

[7] A bad faith claim requires: "(1) a breach of the insurance contract; (2) an intentional refusal to pay the insured's claim; (3) the absence of any legitimate or arguable reason for that refusal; and (4) the insurer's actual knowledge of the absence of any legitimate or arguable reason." *Mutual Serv. Cas. Ins. Co. v. Henderson*, 368 F.3d 1309, 1314 (11th Cir. 2004).

the underlying contract claim must be so strong that the plaintiff would be entitled to a preverdict judgment as a matter of law." *Shelter Mut. Ins. Co. v. Barton*, 822 So. 2d 1149, 1155 (Ala. 2001); *see also Mut. Serv. Cas. Ins. Co. v. Henderson,* 368 F.3d 1309, 1314 (11th Cir. 2004) (internal citation omitted) ("Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the ['normal' bad faith] claim must fail and should not be submitted to the jury.").

Fidelity has presented a "debatable reason for denying the claim at the time the claim was denied" which is sufficient to "defeat a bad faith failure to pay claim." *Coleman v. Unum Grp. Corp.*, 207 F. Supp. 3d 1281 (S.D. Ala. 2016). Given the factual disputes outlined earlier, the Woodens have failed to show that Fidelity had "no legal or factual defense to the insurance claim." *Nat'l Security Fire & Casualty Co. v. Bowen*, 417 So. 2d 179 (Ala. 1982) (holding that the plaintiff must demonstrate more than just a "mere showing of nonpayment" to make out a bad faith nonpayment claim). Moreover, Fidelity's resolution of the Woodens' separate claims for Lot 38 and mineral rights issues undercuts the Woodens' contention of bad faith. Doc. 113-17 at 9. Accordingly, summary judgment is due on this claim.

**D. Breach of Contract Claims**

There are two breach of contract claims being challenged – the Woodens' claim against Fidelity and Fidelity's claim against Smartbank. Docs. 112 at 28; 114 at 31-32; 117 at 16.   For the reasons stated below, both claims survive summary judgment.

1. The Woodens' Claim

Based also Fidelity's failure to pay their claim, the Woodens plead in Count II a claim for a breach of the title policy and judgment for interest.  Both Fidelity and the Woodens seek summary judgment on this claim.

The elements of a breach-of-contract claim are "(1) a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 303 (Ala. 1999).  Relevant here, as explained in Part B, *supra*, there are several factual questions related to the merits of the Woodens' contention of an alleged breach of the policy.  Again, it is unclear whether the error in the legal description is covered under the policy or qualifies as a defect assumed by the Woodens and thus exempted from the policy.  Accordingly, because neither party has conclusively demonstrated whether the Lot 5 claim is covered or excluded under the policy, Fidelity and the Woodens' separate motions on this claim are due to be denied.

2. Fidelity's Claim

Citing Alabama's statute of frauds and the defense of mistake in support of its motion,[8] Smartbank has moved for summary judgment on Fidelity's contingent breach of contract claim — i.e. that if the Woodens "are deemed to have any coverage under the Title Policy as it relates to Lot 5," then Smartbank's "inability to provide good and marketable title to Lot 5 constitutes a breach of [Smartbank's] contractual obligations, from which [Fidelity] has suffered damages." Doc. 96 at 8. For "a contract for sale of land . . . to satisfy the statute of frauds," the contract "must describe the land with such certainty that it can be identified without resort to oral evidence." *Goodwyn v. Jones*, 257 So. 2d 320, 323 (Ala. 1971). Smartbank is generally correct that, notwithstanding the placeholder language that the "title company's legal description" would serve as the replacement, the July 2010 Property Contract, which only described the property as "land located in Jackson County" and "635 acres owned by Seller known as Long Island Overlook Property," violates the statute of frauds. Doc. 113-4 at 6. *See Nix v. Wick*, 66 So. 3d 209, 213 (Ala. 2010) (statute of frauds violation because the contract did not "sufficiently identify the land to be sold" and the parties had not "settled on any area that was well demarcated and recognized" at the time of the contract); *Min Quin Shao v. Corley*, 95 So. 3d 14 (Ala. Civ. App. 2012) (contract did not

---

[8] The mistake defense does not help at this juncture due to the failure to demonstrate a mutual mistake or unilateral mistake with fraud or inequitable conduct. *See* n. 5, *supra.*

"describe the location or dimensions of the parcel in any way" and "referenced a survey [that] had not yet been prepared at the time the document was executed"). However, the contract here satisfies an exception to the statute of frauds, i.e., "the purchase money, or a portion thereof [was] paid and the purchaser [was] put in possession of the land by the seller." *See* Ala. Code § 8-9-2(5) (1975). Indeed, the parties completed the sales transaction, *see* docs. 117-12; 117-17, and the Woodens are in possession of the property, *see* doc. 117-25 at 4. Therefore, Smartbank's motion is due to be denied. *Rentz v. Grant*, 934 So. 2d 368, 373 (Ala. 2006) (holding that the "partial performance" exception to the statute of frauds saved an oral agreement when the purchaser paid all or part of the purchase price and is in possession of the land).

### E. Fidelity's Negligent Misrepresentation Claim

The Woodens seek summary judgment on Fidelity's negligent misrepresentation claim. To prove misrepresentation, Fidelity must present substantial evidence of "(i) a misrepresentation of a material fact, (ii) made to *willfully* deceive *recklessly, without knowledge, or mistakenly*, (iii) which was reasonably relied on by the claimant under the circumstances, and (iv) which proximately injured the claimant." *Bryant Bank v. Talmage Kirkland & Co.*, 155 So. 3d 231, 238 (Ala. 2014) (emphasis added). As explained in Part B, *supra*, material issues of fact preclude the court from finding as a matter of law that the

Woodens have willfully, recklessly, or mistakenly misrepresented a material fact, that the Woodens are responsible for RLS Survey Group's misrepresentation of material fact, that any of the parties can be held liable to a third party's negligent misrepresentation, or that Fidelity had an agency relationship with RLS Survey Group and/or Warranty Title and is therefore responsible for the inclusion of Lot 5 in the legal description. Accordingly, the Woodens' motion on this claim is also due to be denied.

### F. Fidelity's Unclean Hands and Equitable Estoppel Claims

The Woodens also seek summary judgment on Fidelity's unclean hands and equitable estoppel claims in which Fidelity asks the court to preclude "the Woodens from opposing Plaintiff's efforts to reform the Title Policy" or alternatively "conclude that the Woodens' conduct estops them from opposing reformation of the Title Policy." Doc. 96 at 15. Although Fidelity raised the unclean hands and equitable estoppel doctrines as separate causes of action, the doctrines are more appropriate as "affirmative defenses." *Abbott Point of Care, Inc. v. Epocal, Inc.*, 868 F. Supp. 2d 1310, 1316 (N.D. Ala. 2012). Nonetheless, the Woodens' motion is due to be denied because material factual disputes exist over, as to the unclean hand claim, whether the Woodens engaged in any wrongdoing with respect to their involvement with RLS Group and drafting the defective legal description, and, as to the equitable estoppel claim, whether the

Woodens misled Smartbank to include Lot 5 in the purchased property's legal description. Therefore, Fidelity's assertion of these "affirmative defense[s] of inequitable conduct should be presented to the jury." *Id.* at 1318.

## IV. CONCLUSION AND ORDER

Consistent with this opinion, Smartbank's motion, doc. 116, and the Woodens' motions for summary judgment, docs. 114 and 115, are **DENIED**. Fidelity's motion, doc. 112, is **GRANTED** solely as to the Woodens' bad faith claim. Accordingly, the Woodens' bad faith claim, Count III, is **DISMISSED WITH PREJUDICE**.

Fidelity's Motion to Strike the testimony of T. Boice Turner, Jr., doc. 64, which Smartbank did not oppose, *see* doc. 73, is **MOOT** in light of Smartbank's failure to use Turner's testimony in its motion for summary judgment.

Trial will proceed on **February 25, 2019** as scheduled, *see* doc. 94, on the remaining claims. As for the pretrial conference, it is hereby **RESCHEDULED** for **January 29, 2019** at **8 a.m**. at the Federal Courthouse in Decatur, Alabama. The court directs the parties to the Standard Pretrial Procedures governing all pretrial deadlines, which is attached as Exhibit A.

**DONE** the 11th day of January, 2019.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE